## Case No. 10,324.

### NORTHERN TRANSP. CO. v. CHICAGO.

[7 Biss. 45.] [1]

Circuit Court, N. D. Illinois. Nov., 1874.[2]

FOREIGN CORPORATION—EMINENT DOMAIN—NEGLIGENCE—TIME OF OCCUPATION—DAMAGES FOR NEGLIGENCE — SINKING CAUSED BY WEIGHT OF WALL.

1. A foreign corporation has the right to hold and occupy as lessee or otherwise, such property as is necessary or convenient for the transaction of its business.

2. A municipal corporation has a right to enter upon a street, or tunnel under a street, for the purpose of making public improvements; and also has a right for the same purpose to enter upon, occupy and obstruct a portion of the river in front of plaintiff's lot, and construct a coffer-dam there if it was necessary in order to enable it to construct the tunnel.

3. Under such circumstances, however, the city would be liable for damages if it did not use due skill, care and dispatch, so as not to unnecessarily interfere with private property.

4. The fact that the street and river were used for a great length of time makes no difference, as the injury, if any, is only greater in degree, provided however, that they were not used longer than was necessary.

5. The city would be liable for damages caused by the sinking of a wall by reason of the excavation, if they could be charged with negligence.

6. But if such sinking was caused not by the weight of earth but by the superinduced pressure of the weight of the wall, there would be no liability.

At law.

---

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]
[2] [Affirmed in 99 U. S. 635.]

H. F. Waite, for plaintiff.

T. Lyle Dickey, for defendant.

BLODGETT, District Judge (charging jury). This is an action brought by the plaintiff to recover damages by reason of having been deprived of the use of lot 1, in block 4, in the original town of Chicago, by the construction of La Salle street tunnel.

It appears from the evidence in the case, and it may be taken as one of the admitted or conceded facts, that the plaintiff was in possession of the lot in question under a lease from Timothy Wright, which upon certain contingencies was to extend until 1877. The lot in question was bounded upon the east side by La Salle street, and abutted upon the Chicago river on the south, and was docked for the purpose of enabling vessels to approach along-side the end of the lot, and to there load and unload, and lie for the purpose of commerce; and the lot was also occupied or built upon by a warehouse, which was used by the plaintiff for the purpose of transacting its business.

It also appears that plaintiff is a corporation created under the laws of some other state than this—whether Ohio or New York is not material for the purposes of this case —and was engaged in the business of transporting freight and passengers by a line of propellers' between the city of Chicago and the city of Ogdensburg, and transacting a general transportation business.

It is also conceded that La Salle street extends, as laid out, across the river, and is one of the streets of the city of Chicago. Whether it was so platted, and the plat so acknowledged as to vest the fee-simple of the ground covered by the street in the city for the purposes of a street, or whether, by the platting and dedication in the case, the city only acquired right to use the ground as a street, as a common public highway, under a common law dedication, is perhaps immaterial.

But the testimony on the part of the plaintiff tends to show that the street was so platted and recorded that the right of way only is vested in the city authorities, and that the fee-simple in the lands did not vest in the city authorities. I do not consider, however, that this distinction is material for the purposes of this case.

It is also admitted that the defendant at the time mentioned, that is, in the month of November, 1869, entered upon La Salle street for the purpose of constructing a tunnel thereon under the river, and commenced the excavation necessary to construct the tunnel, as has been described to you by the witnesses, taking out the whole body of the earth or material in the centre of the street to within from 18 to 20 feet of the sides of the street, down to the depth of from 30 to 40 feet, removing the material and replacing in the excavation thus made the masonry for the construction of the tunnel; and that for the purpose of constructing the tunnel under the river, the city entered upon the river, in front of a portion of the plaintiff's lot, about 25 feet, and extended from the front a coffer-dam somewhat beyond the middle of the river, thereby depriving the plaintiff of access to its lot to the extent of the 25 feet, and to a considerable extent impeding the plaintiff's access to the remainder of its lot, so that it could not use its lot as conveniently as before the obstruction was placed there; not that the obstruction was total, but it was so great as to seriously impair the plaintiff's use of the property during the time the coffer-dam was retained in place.

It is also in proof on the part of the plaintiff that, by reason of the interference caused by the construction of the tunnel in La Salle street, and by reason of the coffer-dam in the river, the plaintiff was, for the time being, obliged to withdraw the transaction of most of its business from this lot, and obliged to rent other premises during the season of 1870, at which to transact its business, and also in the fall of 1869, to close up the business for part of the fall.

It is also proven on the part of the plaintiff, and insisted on the part of the defendant, that plaintiff had made arrangement with Mr. Diffendorf, by which Diffendorf took possession of the premises in question, paid the rental upon them, paid the plaintiff a certain amount of compensation for the expenditures which the plaintiff had put upon the premises by way of improvement, such as erecting buildings, etc., and paid the insurance and the taxes; that Mr. Diffendorf, as the plaintiff's agent, transacted upon the premises the plaintiff's business on commission, and on being compelled to rent other premises, Mr. Diffendorf, at the end of the season of 1870, made a settlement with the plaintiff by which certain damages were allowed him for the inconvenience and expense to which he had been subjected.

The proof on the part of the defendant tends to show that the construction of this coffer-dam in the river was necessary for the purpose of constructing the tunnel in question, and that there was no practical method known to persons skilled in the business, by which the tunnel could have been constructed, except by the construction of the coffer-dam, so as to enable the excavation to be made in the bed of the river.

The evidence on the part of the defendant also tends to show that there was no unreasonable delay in pushing forward the work; that it was done as rapidly as it could be done, and there being no evidence on the part of the plaintiff to show that there was any unreasonable delay, it may be taken as a proven fact in the case that the construction of the coffer-dam was necessary to the progress of the work, and that the work was pushed forward with reasonable vigor and dispatch.

Taking these as conceded and established

facts in the case, I shall deem it my duty to withdraw from your consideration a large proportion of the claim which the plaintiff has made against the defendant in this case; as I hold the law to be well settled, and so charge you as the law of this case, that the defendant had the right under the law to enter upon La Salle street and make such public improvements as in the judgment of the city authorities were necessary, and to construct the tunnel in question, and that they also had the right for that purpose to enter upon the portion of the river in front of the plaintiff's lot, and construct the coffer-dam there, if it was necessary in order to enable it to construct the tunnel; that plaintiff took his lot subject to the right of the city to make the necessary public improvements in the streets. The method of crossing the river at this point was one to be determined by the city authorities; they could decide whether they would cross, or have the public cross, the river by a ferry, by a bridge, or by a tunnel, and when they had determined to effect the crossing by a tunnel, they had the right to use and occupy so much of the street as was necessary to construct the tunnel, using due skill, and care and dispatch, always in doing it, so as not unnecessarily to interfere with private property by such entry upon the street; although access to its property through the street may have been practically prevented by the occupation of the street, for the purposes of constructing the tunnel, and although access to the lot from the river may have been partially prevented during this time, yet these were incidental inconveniences to which the plaintiff, as owner of the lot, must submit in order that the public may be accommodated by the construction of the tunnel.

The city had the same right to enter upon the river for the purpose of erecting works there to facilitate the construction of the tunnel, that it had to enter upon the street and construct the tunnel itself, always, however, subject to the condition that it should not unnecessarily or negligently injure the plaintiff.

If, for instance, there was a want of due care in the management of the excavation, so that a portion of the plaintiff's walls were caused to crack or break down by reason of such negligence, the defendant is liable for such negligence, but not liable for the general act of entering upon the premises; and therefore, if you find from the evidence in the case that by reason of the negligence on the part of the defendant, or its contractors, which is the same thing, in the bracing or staying of the banks of the tunnel or cut, the walls of the plaintiff's building were caused to fall down, or break, or crack, or become impaired, so that it was necessary to take them down, then the plaintiff would be entitled to recover such damages as the building sustained thereby, but the exclusion from the use of the building, or from the beneficial use, which has been complained of by reason of the necessary occupation of the street (because we must presume that it was necessary) while the tunnel was being constructed, and from the access to his lot by the river as conveniently as he otherwise would have had, but for the necessary construction of the coffer-dam, does not entitle him to the damages which he sustained by such exclusion.

I cannot distinguish the damage which the plaintiff sustained by reason of its exclusion from the lot in this case, from that which every lot owner sustains upon the streets of a city, by the tearing up of the street for the purposes of laying water pipes, or for the purpose of grading, or paving, or any other necessary work of repairing or improving the street; it is only greater in degree.

The plaintiff in this case may have been excluded from the enjoyment of his property eight months. The ordinary citizen by the laying of water pipes may have been excluded only for a week or a day from the convenient access to his premises, but it is the same kind of injury, and only greater in degree.

It is not a taking of the plaintiff's property for public uses. It is only subjecting him to inconveniences for the time being by the construction of public works, and as such, it is one of the incidents to owning a lot in a city, abutting upon a street and upon navigable water.

As I said before, this excludes from your consideration, therefore, the main element of damage which the plaintiff has put in evidence here; that is, the expense of hiring other premises upon which to carry on its business during the season of 1870.

There is left, however, as I said before, the question to be considered by you in the light of the evidence, as to whether the work in La Salle street was so unskillfully or negligently done as to cause any part of the walls to fall, or the building to be impaired. You have heard all the testimony bearing upon that question.

The testimony tends to show, and does show, if I may so state, that the south-east corner of the warehouse, where the office and vaults were situated, became so impaired by the cracking or leaning of the wall outward that it was deemed necessary to take it down, and it was taken down and rebuilt, although there was no apparent settling of the ground in the immediate vicinity, nor any caving in, yet the wall seemed to fall from some cause at this point, and the claim is that it fell from the construction of the tunnel by some displacement of the ground, which, was, perhaps, not apparent to the eye.

You will also bear in mind that the evidence shows that further along, near the north end of plaintiff's building, there was a caving in of the banks, so that the earth near, or, perhaps, immediately under the

wall, was to some extent displaced. The wall fell down there, and was subsequently rebuilt, and the building repaired to some extent.

You have heard all the testimony in regard to the extent of the repairs, and the manner in which the building was left, and it is for you to say whether the building was substantially restored to its original condition by the repairs which were made, so that the plaintiff, on the removal of the coffer-dam, and the other obstruction to the access of its property, could again enter into the enjoyment of its property as fully as before.

If you are satisfied that the building was not so repaired by the defendant as to make it as useful for the plaintiff's purposes as it was before the injuries occurred, then the plaintiff will be entitled to recover such damages as would make it as useful for his purposes.

The plaintiff's title is by a lease, as has been stated, and while there is no express provision in the lease, or right on the part of the tenant to take away the building on the termination of the lease, there is no covenant on the part of the landlord to keep the building in repair; but I think a fair construction of the whole lease, together with the general law in relation to fixtures between landlord and tenant, taken in connection with the evidence in the case, shows that the building was a fixture, and was treated as such between the lessor and lessee.

It seems that the building was constructed several years prior to the making of the lease, which was in force at the time the injury occurred, and was constructed by the plaintiff under some former lease.

The lease continued until the plaintiff built these buildings, or rather the lease was extended or renewed. The plaintiff occupied the buildings with no covenant on the part of the landlord to keep them in repair.

The evidence shows that he had rebuilt them once, and I shall charge you that the buildings in question were a fixture which plaintiff had the right to consider as its own as between itself and any person committing an injury upon it.

It is for you to say, in the light of the testimony in the case, whether the building in question sustained any damage by reason of negligence or unskillfulness on the part of the defendant in the construction of the tunnel, and if it did, the plaintiff will be entitled to recover such damages as the proof in the case shows you these damages amounted to.

A point has been made that defendant, being a foreign corporation, is not entitled to hold property in this state. I simply charge you upon this question, it being purely a question of law, that the plaintiff had the right to occupy and hold, as lessee or otherwise, such property as was necessary or convenient for the transaction of its business.

In considering the question of negligence, you should take into account all the circumstances of the case.

The evidence on the part of the defendant tends to show that it braced the cut as thoroughly as it thought the necessity of the case demanded, but the evidence shows that notwithstanding such bracing, it fell through in one place, or caved in, and the question arises whether, under the circumstances, the mere fact that it caved in does not show that there was some negligence somewhere. The fact that an accident occurred out of the ordinary course of events is usually evidence that somebody is to blame—that somewhere there has been negligence.

It was evidently the intention of these contractors, and of the engineers in charge of the work, that the embankment should be kept in an upright position, and it expected that it had resorted to means and instrumentalities sufficient to maintain it. It is equally clear that some part of the embankment, notwithstanding these precautions, did fall in, and that thereby that part of the wall was broken.

The evidence in regard to the settling of the south-east corner, where the vault was located, is not so clear, but, at the same time, the concurrent settling away of the wall, with the progress of the work, is a circumstance to be taken into account by you in determining whether or not the excavation was the cause of the giving way of the wall at the south-east corner.

If you are satisfied that it was, then the question is, whether there was any unskillfulness or want of care in this regard, or whether it was one of those phenomena, or occurrences, which no precaution could have guarded against, whether any bracing across the cut at this point would have prevented the adjacent wall from being to some extent affected. You must pass upon these questions, gentlemen, in the light of evidence. The court cannot help you any more than to call your attention to the facts.

Mr. Waite: I will ask the court to instruct the jury that even if the city be entitled to lay a coffer-dam along across the river, it had no right to lay the coffer-dam in front of the plaintiff's lot, and for any damages which the plaintiff may have suffered by the coffer-dam being in front of the dock, it is entitled to recover in this action.

THE COURT: I refuse this, always assuming that the proof shows that the coffer-dam was necessary. I look upon the river just as I do the street. They have the same right to go into the river and construct a coffer-dam, in order to complete the work, that they have to go on to the street and put down a track, or other work, which is nec-

essary, in order to carry on improvements.

Mr. Dickey: I ask the court to charge the jury, in so far as the settling of the walls of the building is concerned, that while it was the duty of the defendant to protect the work, so that the weight of the natural earth of the plaintiff's lot could not have caved in, yet it was not bound to protect against the effect of the weight of the wall of the building; that if the jury believe, from the evidence, that the cracking was caused by the weight of the wall, which otherwise would not have occurred, the defendant is not liable for this.

THE COURT: I will say to the jury, that if you are satisfied, from the evidence, that the sinking of the wall was due to the weight of the walls upon the selvage, or portion of the earth which was left, and not to the removal of the material which was taken out of the street, then the defendant would not be liable. If you are satisfied that if the wall hadn't stood upon the plaintiff's lot, at the place where it did, there would have been no change in the level of the ground there, but that the change in the level, which caused the deflection of the wall, was caused by the weight of the wall resting upon the earth, after the excavation was made, then the defendant is not liable.

The principle is precisely like that of two adjacent owners,—one man building a building, and sinking his foundation four feet into the ground; the adjoining owner may think it is necessary for him to set his six or ten feet into the ground, and he excavates for that purpose. Now, if the wall first built, by reason of its own weight, causes the earth to crush or cave away, after the excavation, before the building has been erected upon the adjoining lot, the owner of the adjoining lot making the deeper excavation is not liable. Each man, in other words, must look out for his own foundation.

The jury found a verdict for the plaintiff, and awarded one hundred dollars damages.
[Plaintiff appealed to the supreme court, where the judgment of this court was affirmed. 99 U. S. 635.]